Case 1:20-mj-01446-TMD   Document 3   Filed 06/23/20   Page 1 of 18

x FILED ___ ENTERED
___ LOGGED ___ RECEIVED

1:58 pm, Jun 23 2020
AT BALTIMORE
CLERK, U.S. DISTRICRT COURT
DISTRICT OF MARYLAND
BY crp _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF A SEARCH WARRANT AUTHORIZING A DNA SAMPLE COLLECTION FROM TONY SOLOMON, GEORGE DRUMMOND, DELSHAWN HARVEY, PEREZ SCRUGGS, AND DERRICK CROSBY DESCRIBED IN ATTACHMENTS A1-A5 | CASE NO. 1:20-mj-1446 TMD<br>1:20-mj-1447 TMD<br>1:20-mj-1448 TMD<br>1:20-mj-1449 TMD<br>1:20-mj-1450 TMD |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS AUTHORIZING A DNA SAMPLE COLLECTION FROM DERRICK CROSBY, DELSHAWN HARVEY, PEREZ SCRUGGS, TONY SOLOMON, AND GEORGE DRUMMOND

I, Jonathan Poole, Special Agent (SA) with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

1. I submit this affidavit in support of an application for a search warrant to obtain samples of Deoxyribonucleic Acid ("DNA") for comparison purposes in the form of hair and saliva from the following persons:

   a. **Tony SOLOMON**, a black male with a date of birth of February 20, 1966 and FBI number 150594HA6 ("**SOLOMON**," see Attachment A-1). SOLOMON is currently being held at the Chesapeake Detention Facility, located at 401 E Madison Street, Baltimore, Maryland, 21202. I seek to seize this evidence in relation to an investigation involving firearm and drug trafficking violations. Specifically, violations involving 18 U.S.C. § 922(g)(1)(prohibited person in possession of a firearm); 18 U.S.C. § 924 (c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime); 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances); and 21 U.S.C. § 841, (possession with intent to distribute and

1

1:20-mj-1446, -1447, -1448, -1449, -1450 TMD

distribution of controlled substances)(collectively, "the Federal Offenses");

   b. **George DRUMMOND**, a black male with a date of birth of April 10, 1970 and FBI number 331935LA0 ("**DRUMMOND**," see Attachment A-2). DRUMMOND is currently being supervised by pre-trial services and residing at 3201 Brighton Street, Baltimore, Maryland. I seek to seize this evidence in relation to an investigation of the Federal Offenses.

   c. **Delshawn HARVEY**, a black male with a date of birth of January 14, 1979 and FBI number 201359JB3 ("**HARVEY**," see Attachment A-3). HARVEY is currently being held at the Chesapeake Detention Facility, located at 401 E Madison Street, Baltimore, Maryland, 21202. I seek to seize this evidence in relation to an investigation of the Federal Offenses.

   d. **Perez SCRUGGS**, a black male with a date of birth of October 11, 1995 and FBI number 833889WD0 ("**SCRUGGS**," see Attachment A-4). SCRUGGS is currently being held at the Central Treatment Facility ("CTF"), located at 1901 D Street, SE, Washington, D.C. 20003. I seek to seize this evidence in relation to an investigation of the Federal Offenses.

   e. **Derrick CROSBY**, a black male with a date of birth of June 22, 1981 and FBI number 756139HB9 ("**CROSBY**," see Attachment A-5; collectively the "**TARGET SUBJECTS**"). CROSBY is currently being held at the Chesapeake Detention Facility, located at 401 E Madison Street, Maryland, 21202. I seek to seize this evidence in relation to an investigation of the Federal Offenses.

   f. The applied for DNA warrants would authorize members of the DEA, or their authorized representatives, including but not limited to other law enforcement agents assisting in the described investigation, to obtain DNA contained within hair and saliva samples from the **TARGET SUBJECTS**.

2

1:20-mj-1446, -1447, -1448, -1449, -1450 TMD

## AFFIANT BACKGROUND

2. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3. I have been a Special Agent of the Drug Enforcement Administration ("DEA") since September 2017. I am currently assigned to the Baltimore District Office, Strike Force Group 1, which investigates drug trafficking organizations and their ties to violence. I received 19 weeks of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Following graduation from the DEA Academy, I was assigned to the Atlanta Field Division Office and worked there until July of 2018, when I was assigned to the Baltimore District Office in Baltimore, MD. Prior to my employment as a Special Agent with the DEA, I was employed as a police officer/detective by the City of Suwanee Police Department for 4 years, two of which I spent assigned to the Gwinnett Metro Drug Task Force in Gwinnett County, Georgia.

4. During my time as a law enforcement officer, I have participated in numerous investigations involving drug trafficking to include the use of confidential informants, undercover transactions, physical and electronic surveillance, telephone toll analysis, investigative interviews, the execution of search and seizure warrants, and the recovery of substantial quantities of narcotics, narcotics proceeds, and narcotics paraphernalia. I have reviewed recorded conversations, as well as documents and other records relating to narcotics trafficking and money laundering. I have examined records consisting in part of buyers and seller's lists, and pay/owe ledgers. I have

interviewed drug dealers, drug users, and confidential informants and have discussed with them the lifestyles, appearances, and habits of drug dealers and drug users.

5. Through training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the possession and use of firearms in connection with trafficking of such drugs, and the methods by which narcotics traffickers collect, store and conceal the proceeds of their illegal activities. I have also become familiar with the manner in which drug traffickers use telephones, cellular telephone technology, pagers, coded communications or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

6. Through training, interviewing of dozens of persons arrested for controlled dangerous substance (CDS) offenses, watching hundreds of hours of surveillance of suspected drug traffickers, and monitoring of countless hours of intercepted communications involving drug trafficking, I am familiar with the actions, traits, habits, and terminology utilized by drug traffickers.

7. Based upon that training and experience, I have learned the following:

    a. Drug traffickers keep and maintain records of their various activities. Such records are regularly concealed in a suspect's automobile, residence, office, and on his person, and that they take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled dangerous substances or other such documents which will contain identifying data on the co-conspirators. These items are kept in locations that are considered safe by the drug traffickers such as safety deposit boxes, residences, vehicles and on their person, where they have ready access to them. Drug traffickers often have several residences decreasing the likelihood of detection by law enforcement;

b. Drug traffickers may use computers or other electronic storage media, including smart phones, to store the records of documents listed in paragraph a;

c. Drug traffickers maintain on hand large amounts of cash to maintain and finance their narcotics business, which is typically concealed in their residences or vehicles along with financial instruments and evidence of financial transactions relating to narcotics trafficking activities;

d. Drug traffickers use cellular telephones, pagers and other electronic communications devices to facilitate illegal drug transactions. The electronically stored information on these devices is of evidentiary value in identifying other members of the drug trafficking conspiracy and establishing the relationship between these individuals, including photographs and other identifying information stored on these devices;

e. Drug traffickers commonly possess firearms and other weapons to protect and secure their narcotics and money from loss to law enforcement agents or other members of the criminal element that are motivated by greed; and

f. Drug traffickers commonly possess packaging material, cutting agents, digital scales, and other items used in the preparation and packaging of controlled substances.

8. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search and seizure warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, cooperating sources, telephone records, and reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

9. In July 2018, the DEA began investigating two violent drug trafficking organizations (DTO) operating in the eastern section of Baltimore City (the Montford DTO and

5

the "Out the Mud," or OTM DTO). Based on evidence gathered during that investigation, agents determined that the two DTOs, appeared to be linked, and were responsible for street-level drug activity as well as acts of violence associated with that drug activity.

10. This investigation led to the interception of wire and electronic communications of multiple members of the DTOs. In January, May, and June of 2019, investigators executed search warrants at locations associated with the **TARGET SUBJECTS**. In addition to other items, investigators seized firearms at each location associated with the **TARGET SUBJECTS** (described in greater detail below). At the time of each search and seizure warrant, DNA samples were recovered from the firearms seized during the course of the investigation.

11. Ultimately, the **TARGET SUBJECTS** were federally indicted for drug trafficking and weapons violations (*see United States v. Darryl Adams, ELH-19-0286*), and are currently being held at locations noted above.

## TONY SOLOMON and GEORGE DRUMMOND

12. During the course of the investigation, investigators identified Daniel BLUE as a source of supply of CDS for the Montford and OTM DTOs. Upon further investigation, including the interception of BLUE's communications, investigators identified **SOLOMON** as one of BLUE's sources of supply. Additionally, **DRUMMOND** was identified as an associate of **SOLOMON** who operated a stash house at his residence (described below), and is believed to have made deliveries of CDS to SOLOMON's customers. .

13. On January 16, 2019, U.S. Magistrate Judge Stephanie A. Gallagher authorized a search warrant for **SOLOMON's** residence (the suspected stash house), located at 3201 Brighton Street, Baltimore, MD. On January 23, 2019, investigators executed the search warrant at the

6

location. George **DRUMMOND** and his wife, Nicole **DRUMMOND** (who is also **SOLOMON**'s niece), were located inside the residence. In the basement, investigators located and seized several bags with controlled dangerous substances to include a bag containing approximately 147 grams of heroin/fentanyl mixture, a bag with cocaine residue, and bags with marijuana[1], CDS processing materials, two kilo presses with cocaine, heroin and fentanyl residue, multiple bags with CDS cutting agents, and multiple bags of empty gel caps and plastic containers used to package CDS. Investigators also located and seized a letter addressed to **SOLOMON**. All of the items in the basement were in close proximity to each other. In the second floor rear bedroom, investigators also located and seized more CDS cutting agents, empty gel caps and plastic containers for packaging CDS, and a Glock Model 37, .45 caliber handgun. Investigators also seized a letter addressed to **SOLOMON** from this bedroom. All of the items in this rear bedroom were in close proximity to each other.

14. During the search, investigators also located a digital scale and several baggies of marijuana in **DRUMMOND's** front bedroom closet. Additional marijuana was located in **DRUMMOND's** vehicle, which **DRUMMOND** told investigators about prior to the search.

15. During the search of the residence, and after being read his *Miranda* rights, **DRUMMOND** told investigators that **SOLOMON** used to reside at the residence and maintained access to the residence since he never returned his key. Nicole Drummond also confirmed that her brother and uncle had access to the residence. She told investigators that her uncle is Tony **SOLOMON**.

---

1 After being advised of his *Miranda* rights, **DRUMMOND** told investigators about the marijuana in the basement prior to the search, but did not say anything about the other items located in the basement.

1:20-mj-1446, -1447, -1448, -1449, -1450 TMD

16. The aforementioned firearm, a Glock Model 37, .45 caliber handgun, has been examined and appears to be capable of expelling a projectile by the action of an explosive. The firearm was manufactured outside the state of Maryland and would have traveled in and affected interstate commerce. Prior to January 23, 2019, both **DRUMMOND** and **SOLOMON** had been convicted of a "crime punishable by imprisonment for a term exceeding one year" as that phrase is defined at 18 U.S.C. § 921.

17. **DRUMMOND** was convicted in 2003 for possession with intent to distribute CDS for which he was sentenced to 8 years' incarceration. Prior to January 23, 2019, and at the time that he possessed the firearms described herein, the defendant had knowledge of the fact that he had been previously convicted of such a crime. **SOLOMON** was convicted in 2006 for federal conspiracy to distribute and possess with intent to distribute (Criminal Case No.: RWT-04-0234) for which he was sentenced to 144 months' incarceration and five years of supervised release. Prior to January 23, 2019, and at the time that he possessed the firearms described herein, the defendant had knowledge of the fact that he had been previously convicted of such a crime.

### DELSHAWN HARVEY

18. Over the course of this investigation, investigators also identified Egan DAVIS as a wholesale CDS distributor. DAVIS was supplied by BLUE and also by by Anton WILLIAMS and Delshawn **HARVEY**. During this investigation, investigators intercepted **HARVEY**'s communications, further confirming **HARVEY**'s role as a source of supply to DAVIS. Additionally, Andre LEMON was identified as an associate of **HARVEY**, often making CDS deliveries for **HARVEY** and operating a stash house at 2454 Keyworth Avenue in Baltimore City (described below). Investigators observed both **HARVEY** and LEMON regularly entering and

leaving the stash house.

19. On May 16, 2019, U.S. Magistrate Judge J. Mark Coulson authorized a search warrant for **HARVEY**'s stash house located at 2454 Keyworth Avenue, Baltimore, MD. On May 22, 2019, investigators executed the search warrant at this location. Reginald Pulley and Yvette Banks were located inside the residence. Several items were located and seized from the first floor bedroom. These items included one kilogram of cocaine, four digital scales, three cell phones, multiple bags of blue pills (suspected oxycodone), and two firearms (Davis Industries .380 caliber handgun and a Taurus model PT140, .40 caliber handgun).

20. Following the execution of the search warrant, Pulley was advised of his *Miranda* rights and interviewed. During the interview, and when asked who had access to his home, Pulley said that his son, "Dell", (Delshawn **HARVEY**) and "Dell's" friend (Andre LEMON) had access to his home.

21. The aforementioned firearms, a Davis Industries, .380 caliber handgun and a Taurus, Model PT140, .40 caliber handgun, have been examined and appears to be capable of expelling a projectile by the action of an explosive. The firearm's were manufactured outside the state of Maryland and would have traveled in and affected interstate commerce. Prior to May 22, 2019, **HARVEY** had been convicted of a "crime punishable by imprisonment for a term exceeding one year" as that phrase is defined at 18 U.S.C. § 921. Specifically, **HARVEY** was convicted in 2005 for possessing a deadly weapon with intent to injure for which he was sentenced to 25 years' incarceration with 15 years suspended and placed on 3 years of probation. Prior to May 22, 2019, and at the time that he possessed the firearms described herein, the defendant had knowledge of the fact that he had been previously convicted of such a crime.

## PEREZ SCRUGGS

22. During the course of this investigation, agents identified SCRUGGS as a multi-ounce CDS customer of Anton WILLIAMS. Additionally, SCRUGGS was intercepted communicating with WILLIAMS regarding this CDS activity. Investigators identified 2420 Woodbrook Avenue, Baltimore, MD as a stash location used by SCRUGGS and also listed the address as his place of residence to the Motor Vehicle Administration (MVA).

23. On May 16, 2019, U.S. Magistrate Judge J. Mark Coulson authorized a search warrant for SCRUGGS's stash house, 2420 Woodbrook Avenue. On May 22, 2019, investigators executed the search warrant at this location. SCRUGGS was located inside the residence. Investigators located and seized kilo wrappers, mail in SCRUGGS's name, and SCRUGGS's cell phone from his bedroom. Also, after being read his *Miranda* rights, SCRUGGS told investigators that he had "rent money" under the mattress in this same bedroom. Investigators located this money, but did not seize it.

24. Investigators also searched the basement of the residence, locating and seizing approximately 255 grams of cocaine, a digital scale, CDS packaging materials, and three firearms. The firearms were: a H&K, MP5, .22 caliber pistol; a Sears, JC Higgin, Model 20, 12 gauge shotgun; and a Remington Arms, 1187, 12 gauge shotgun. Investigators also located and seized six 9mm cartridges in the pocket of a pool table in the basement, although a 9mm firearm was not located.

25. The aforementioned three firearms have all been examined and appear to be capable of expelling a projectile by the action of an explosive. The firearms were manufactured outside the state of Maryland and would have traveled in and affected interstate commerce prior to their

10

recovery by law enforcement. Prior to May 22, 2019, **SCRUGGS** had been convicted of a "crime punishable by imprisonment for a term exceeding one year" as that phrase is defined at 18 U.S.C. § 921. Specifically, **SCRUGGS** was convicted in 2013 for armed robbery in which he was sentenced to 5 years' incarceration, all of which was suspended and placed on 3 years of probation. Prior to May 22, 2019, and at the time that he possessed the firearms described herein, the defendant had knowledge of the fact that he had been previously convicted of such a crime.

### DERRICK CROSBY

26. During the course of the investigation, investigators identified **CROSBY** as a source of supply of CDS to various customers in Baltimore, MD. Investigators identified Jamaica LEWIS as an associate of **CROSBY**. On June 19, 2019, U.S. Magistrate Judge A. David Copperthite authorized search warrants for 1741 Dallas Street, Baltimore, MD and 631 St. Anns Avenue, Baltimore, MD, two locations associated with **CROSBY** and LEWIS. Earlier that day, investigators saw **CROSBY** carry a bag into 1741 Dallas Street. **CROSBY** then left the residence carrying a large black bag, placed the bag into the rear of his vehicle, and traveled to his residence, 631 St. Anns Avenue.

27. Investigators executed both search warrants later this same day. Investigators seized approximately 677 grams of fentanyl, 40 vials of crack cocaine, CDS cutting agents, and CDS processing materials from 1741 Dallas Street. When investigators executed the search warrant at **CROSBY**'s residence, 631 St. Anns Avenue, they located and seized multiple bottles of suspected heroin/fentanyl from the back yard. **CROSBY**'s vehicle (a white Acura TLX registered to **CROSBY**) was towed to the DEA's Baltimore District Office. On June 21, 2019, U.S. Magistrate Judge A. David Copperthite authorized a search warrant for the vehicle. During

11

the subsequent search of the vehicle, investigators located a Smith and Wesson .40 caliber handgun.

28. The aforementioned firearm, a Smith and Wesson .40 caliber handgun, has been examined and appears to be capable of expelling a projectile by the action of an explosive. The firearm was manufactured outside the state of Maryland and would have traveled in and affected interstate commerce. Prior to June 19, 2019, **CROSBY** had been convicted of a "crime punishable by imprisonment for a term exceeding one year" as that phrase is defined at 18 U.S.C. § 921. Specifically, **CROSBY**, was convicted in 2001 for possession with intent to distribute in which he was sentenced to 5 years' incarceration. Prior to June 19, 2019, and at the time that he possessed the firearms described herein, the defendant had knowledge of the fact that he had been previously convicted of such a crime.

29. Given the facts set forth above, I have probable cause to believe that the **TARGET SUBJECTS** have committed violations involving the Federal Offenses. As such, I respectfully request that this Court find probable cause that evidence of the aforementioned criminal violations is contained in the form of DNA in hair lock specimens and saliva in the possession of the **TARGET SUBJECTS**.

## CONCLUSION

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the DEA, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to obtain DNA samples from the **TARGET SUBJECTS** (whose images appear in Attachments A1-A5), so that the DNA samples may be compared to evidence collected during the course of this investigation.

1:20-mj-1446, -1447, -1448, -1449, -1450 TMD

_____
Jonathan Poole
Special Agent, DEA

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this _2_ day of June, 2020.

_____
The Honorable Thomas M. DiGirolamo
United States Magistrate Judge

13

1:20-mj-1446, -1447, -1448, -1449, -1450 TMD

## ATTACHMENT A-1

**Tony SOLOMON**, black male with a date of birth of February 20, 1966 and FBI number 150594HA6



14

## ATTACHMENT A-2

**George DRUMMOND**, black male with a date of birth of April 10, 1970 and FBI number 331935LA0



## ATTACHMENT A-3

**Delshawn HARVEY**, black male with a date of birth of January 14, 1979 and FBI number 201359JB3



## ATTACHMENT A-4

**Perez SCRUGGS**, black male with a date of birth of October 11, 1995 and FBI number 833889WD0



17

1:20-mj-1446, -1447, -1448, -1449, -1450 TMD

## **ATTACHMENT A-5**

**Derrick CROSBY**, black male with a date of birth of June 22, 1981 and FBI number 756139HB9

